IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VANDAIRE KNOX,

      Plaintiff,

v.                              No. 17-cv-00092-DRH

KIMBERLY BUTLER,
CAMERON WATSON,
MAJOR HASSAMEYER,
LIEUTENANT MEYER,
PELKER,
JOHN DOE, 1,
JOHN DOE, 2,
JOHN TROST,
MIKE,
SUSAN KIRK,
IDOC, and
WEXFORD HEALTH SOURCES,

      Defendants.

## <u>MEMORANDUM AND ORDER</u>

**HERNDON, District Judge:**

Plaintiff Vandaire Knox, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiff suffers from persistent swelling and severe pain in his left knee.  As a result, Plaintiff has a knee brace permit and a low bunk/low gallery permit.  In June 2015, after Plaintiff was transferred to Menard's North II segregation unit, Defendants confiscated Plaintiff's knee brace for 49 days and did not honor Plaintiff's low bunk/low gallery permit.  When Plaintiff filed grievances regarding

this conduct, Defendants moved Plaintiff to a more restrictive cell.  Additionally, in September 2015, when Plaintiff was released from segregation, Defendants housed Plaintiff in a location that made it difficult, if not impossible, for an individual with Plaintiff's disabilities to commute to the showers.  As a result, Plaintiff was unable to attend showers for 390 days.  Plaintiff alleges Defendants' conduct caused severe pain and exacerbated his knee injury.

In connection with these claims, Plaintiff sues Kimberly Butler (Warden), Cameron Watson (Assistant Warden), Major Hassameyer (Cell House Major), Lieutenant Meyer (Cell House Lieutenant), Pelker (Cell House Sergeant), John Doe 1 (Cell House Gallery Officer), John Doe 2 (Cell House Gallery Officer), John Trost (Doctor), Mike (Medical Technician), Susan Kirk (Nurse), Illinois Department of Corrections ("IDOC"), and Wexford Health Sources ("Wexford") (Corporate Healthcare Provider).   Plaintiff has sued all Defendants in their official and individual capacities.  He seeks monetary damages and injunctive relief.

Plaintiff's request for injunctive relief references a preliminary injunction and a temporary restraining order ("TRO").   Out of an abundance of caution, the Court construes the Complaint as including a Motion for a TRO pursuant to Federal Rule of Civil Procedure 65(b), a Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a), as well as a general prayer for injunctive relief.

The Court denied the Motion for a TRO on February 2, 2017 and reserved ruling on the Motion for Preliminary Injunction.  (Doc. 5).  As is discussed more

fully below, the Motion for Preliminary Injunction will be referred to the magistrate judge for prompt disposition.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).   An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557.   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### **Plaintiff's Prior 1983 Action Involving Left Knee Injury**

This is not Plaintiff's first action raising claims pertaining to his left knee. In 2014, Plaintiff filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging 19 defendants at Menard were deliberately indifferent to his left knee injury. *See Knox v. Shearing et al,* Case No. 3:14-cv-193-MJR ("Prior Case"). With the exception of Butler, the instant action does not involve the same defendants.

According to the complaint in the Prior Case, Plaintiff was transferred to Menard in January 2011 with a preexisting knee injury. Plaintiff raised deliberate indifference claims premised on allegations that the defendants either failed to provide or renew Plaintiff's pain medication, or gave him medication known to be ineffective and to cause harmful side effects. Plaintiff sought damages, declaratory relief, and injunctive relief.

The case moved forward and, on November 1, 2016, the parties reached a confidential settlement agreement. (Prior Case, Doc. 153).[1] That same day, a 60-day order was entered. (Prior Case, Doc. 154). The 60-day order deadline was recently extended to March 7, 2017 in response to a request from the parties seeking additional time to consummate settlement. (Prior Case, Doc. 160).

---

[1] The Court notes an issue pertaining to injunctive relief is presently being appealed. (Prior Case, Doc. 54, 87).

Accordingly, Plaintiff's Prior Case is still pending. The Court also notes that in January 2016 (shortly after the events at issue in the instant action occurred), Plaintiff made an oral motion for preliminary injunction. (Prior Case, Doc. 113). The record does not reflect the matters at issue in relation to Plaintiff's oral motion for preliminary injunction and the motion was subsequently withdrawn. (Prior Case, Doc. 120). Accordingly, the Court cannot determine if Plaintiff's oral motion for preliminary injunction involved any of the constitutional violations alleged in the instant case.

The Court has reviewed the Prior Case in an effort to determine whether the doctrine of claim preclusion, or res judicata, precludes Plaintiff from litigating the constitutional claims raised in the instant case. *See Briggs-Muhammad v. SSM Healthcare Corp.*, 567 F. App'x 464, 464-65 (7th Cir. 2014) (at the screening stage, it is permissible to rely on an affirmative defense, such as claim preclusion, that is "apparent and unmistakable" from the face of the complaint and the documents in the district court's possession to dismiss a case). Claim preclusion "is an affirmative defense designed to prevent the 'relitigation of claims that were or could have been asserted in an earlier proceeding.' " *Rizzo v. Sheahan*, 266 F.3d 705, 714 (7th Cir. 2001) (citation omitted). "A consent decree is res judicata and thus bars either party from reopening the dispute by filing a fresh lawsuit. Alternatively, it is a contract in which the parties deal away their right to litigate over the subject matter." *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988) (internal citations omitted). That "another case is pending does not raise

questions of res judicata. Only a prior *judgment* is entitled to preclusive effect."

*Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (emphasis in original).  As

noted, the Prior Action remains pending.   Further, although deliberate

indifference to Plaintiff's knee condition is at issue in both cases, the cases involve

different defendants and the violations at issue here occurred at a later time than

the violations alleged in the complaint filed in the Prior Case.  Finally, the Court

does not have access to the parties' confidential settlement (which is not yet final)

and cannot make any determinations based on its content.  Accordingly, at this

point in the litigation, the Court cannot say that any of Plaintiff's claims are

precluded by the doctrine of claim preclusion or *res judicata*.

**The Complaint**

Plaintiff suffers from left knee pain and wears a knee brace for stability.

(Doc. 1, p. 4).  In January 2015, Plaintiff was issued a low bunk/low gallery

permit and a knee brace permit.  (Doc. 1, p. 4; Doc. 1-1, p. 13).  The expiration

date for the permit was January 15, 2016.  (Doc. 1-1, p. 13).

On June 30, 2015, Plaintiff was transferred to Menard's North II

segregation unit.  *Id.*  Upon arrival, Plaintiff was placed in a shower to be strip

searched.  *Id.*  Doe 1, an unidentified cell house gallery officer, informed Plaintiff

that he had to remove his knee brace.  *Id.*  Plaintiff explained that his knee caused

him a lot of pain, the knee brace was necessary for stabilization, and he showed

Doe 1 his knee brace permit.  *Id.*  Plaintiff also explained that he had a low

bunk/low gallery permit and could not climb stairs due to his knee issues.  *Id.*

Doe 1 disregarded the Plaintiff, confiscated Plaintiff's knee brace, and indicated he would speak with his sergeant regarding Plaintiff's permits. *Id.* Plaintiff was then cuffed from the back, making it difficult for him to stand. *Id.* Thereafter, despite having a low bunk/low gallery permit, Plaintiff was housed in gallery 4. (Doc. 1, p. 5). As a result, Plaintiff had to climb stairs without his knee brace.

On July 2, 2015, Doe 2, a second unidentified cell house gallery officer, informed Plaintiff he was being transferred to gallery 8. *Id.* Plaintiff informed Doe 2 that he could not climb that many stairs because of his knee, hip, and back problems. *Id.* He also informed Doe 2 that his knee brace had been taken and that he had a knee brace permit and a low bunk/low gallery permit. *Id.* Doe 2 asked to review Plaintiff's permits. *Id.* After reviewing Plaintiff's permits, Doe 2 indicated he would speak with Pelker, a sergeant. *Id.* Doe 2 then left to speak with Pelker. *Id.* Upon returning, Doe 2 informed Plaintiff that Pelker "doesn't care." *Id.* Plaintiff requested to speak with a lieutenant and asked for his knee brace to be returned. *Id.* Doe 2 denied both requests. *Id.* Plaintiff was then handcuffed from the back and forced to climb stairs, from gallery 4 to gallery 8, without his knee brace. *Id.* The move caused Plaintiff severe pain and caused his knee to swell. *Id.* After reaching gallery 8, Plaintiff informed Doe 2 that he was in pain and that his knee was swelling. *Id.* Plaintiff asked Doe 2 to notify medical staff. *Id.* Plaintiff's request was denied.

Despite repeated requests to various Defendants, Plaintiff's knee brace was not returned until August 17, 2015 (a total of 49 days). (Doc. 1, pp. 6-7). *See*

*also* (Doc. 1-1 p. 8, inmate personal property receipt noting knee brace was returned on 8/17/15). Plaintiff specifically references having detailed face-to-face conversations with and/or submitting detailed letters and/or grievances to the following officials:

(1) Officer Shemoney (Doc. 1, pp. 6-7);[2]

(2) Kirk (Doc. 1, pp. 6-7; Doc. 1-1, p. 6);

(3) Pelker (Doc. 1, pp. 6-7, 11; Doc. 1-1, p. 3);

(4) Butler (Doc. 1, p. 10; Doc. 1-1, p. 1, 4);

(5) Watson (Doc. 1, p. 10; Doc. 1-1, p. 2, 5); and

(6) Hassameyer (Doc. 1, p. 11; Doc. 1-1, p. 7).

Additionally, On August 10, 2015, Plaintiff filed a grievance regarding his confiscated knee brace and prison officials' refusal to honor his knee brace and low bunk/low gallery permits. (Doc. 1, p. 2; Doc. 1-1, p. 16).[3]

While Plaintiff was without his knee brace, Plaintiff was in severe pain, suffered from a swollen knee, and was often restricted to his bed. (Doc. 1, pp. 6-7). After Plaintiff's brace was returned, Mike, a medical technician, and Meyer, a Lieutenant, came to Plaintiff's cell and informed Plaintiff he would have to sign a new permit – even though the original permit was still valid. (Doc. 1, p. 7). The new permit did not have a low gallery authorization. *Id.* Plaintiff refused to sign

---

[2] As is noted in the discussion below, this officer is not a named defendant and, to the extent that Plaintiff intended to assert any claims against him, such claims should be considered dismissed without prejudice.

[3] Plaintiff also indicates that he filed grievances on September 10, 2015 and September 27, 2015, which were ignored. (Doc. 1, p. 2). The Complaint also includes several letters to counselors inquiring about the status of grievances. (Doc. 1-1, pp. 18-21).

the new permit because it did not have a low gallery authorization, his prior permit was still valid, and Meyer's explanations for why a new permit was necessary did not make any sense.  *Id.*  When Plaintiff refused to sign the new permit, Meyer got angry and said, "If you do not sign that permit you will have problems back here."  *Id.*

After refusing to sign the permit, Plaintiff was escorted to the medical unit. (Doc. 1, p. 8).  Trost and Mike were present.  *Id.*  Trost inquired about why Plaintiff was refusing to sign the new permit, and Plaintiff explained himself.  *Id.* Trost indicated that he did not have any skin in the game, and he was only trying to help Plaintiff.  *Id.*  Plaintiff then asked Trost why Trost had refused to help Plaintiff in the past when Plaintiff was seen regarding his knee pain.  *Id.*  Trost encouraged Plaintiff to sign the permit.  *Id.*  Trost also indicated that if Plaintiff would sign the permit, Trost would review Plaintiff's medical records and see what he could do for Plaintiff.  *Id.*  Plaintiff continued to refuse to sign the permit. (Doc. 1, p. 9).  Trost then offered to order Plaintiff a new brace, increase Plaintiff's naproxen dosage to 750 mg., and inquire about physical therapy.  *Id.  See also* (Doc. 1-1, pp. 11-12).  However, Trost's offer was conditioned on Plaintiff signing the permit.  *Id.*  Trost also noted that if Trost followed through on his offer, Plaintiff's prior grievance[4] regarding his knee brace and low gallery permit "should be void right?"  *Id.*

---

[4]  Presumably, Trost was referring to Plaintiff's August 10, 2015 grievance.

On August 19, 2015, Plaintiff was informed by Officer Shemoney that he was being transferred to a new cell.  (Doc. 1, p. 12).  Plaintiff asked why he was being transferred, and Officer Shemoney stated the decision came from a "higher authority."  *Id.*  The new cell was more restrictive than Plaintiff's previous cell.  *Id.*  The cell had solid steel across the front and did not allow any fresh air to enter the cell.  *Id.*  Plaintiff claims he was transferred to this cell in retaliation for filing grievances regarding his knee brace and/or for refusing to sign a new permit.  *Id.*

Plaintiff alleges additional constitutional violations after he was released from segregation on September 23, 2015.[5]  (Doc. 1, p. 17).  According to the Plaintiff, when he was released from segregation he was placed in a "high" aggression building in the East cell house.  *Id.*   Plaintiff claims his assigned aggression level did not warrant such a placement.  *Id.*  Because of Plaintiff's disability and low gallery permit, Plaintiff was housed in gallery 1.  However, the showers in the East cell house are located on gallery 5.  *Id.*  Plaintiff alleges that his disability prevented him from walking to gallery 5 and, as a result, he was unable to attend showers for 390 days.  *Id.*   Plaintiff does not identify any particular individuals in relation to these claims.

Plaintiff states that his August 10, 2015 grievance was deemed an emergency and ultimately resolved on March 7, 2016. (Doc. 1, p. 2).  A grievance response dated March 1, 2016 is attached as an exhibit to the Complaint.  (Doc.

---

[5]  These allegations are included in Plaintiff's request for injunctive relief.  Reading Plaintiff's Complaint liberally, which the Court is required to do at this point in the litigation, the Court construes Plaintiff's description of the events surrounding his release from segregation in September 2015 as an attempt to allege constitutional violations regarding the same.

1-1, p. 15).  This grievance was signed by Butler on March 7, 2016.  *Id.*  The grievance response indicates it is in relation to Plaintiff's August 10, 2015 grievance.  The resolution states as follows:  "issue resolved as offender received knee brace 8/17/15 and has low gallery/low bunk permit."  *Id.*

Plaintiff seeks damages and injunctive relief.  (Doc. 1, pp. 13, 16-17).

## <u>Discussion</u>

The Court begins its § 1915A review with a note about the parties at issue in this case. At several places in his Complaint, Plaintiff refers to the conduct of "Officer Shemoney."  This individual is not named in the caption or defendant list. The Court cannot discern whether Plaintiff intended to raise discrete claims against this individual. Regardless, because Officer Shemoney is not listed in the caption by name or by Doe designation, this individual will not be treated as a defendant in this case, and any claims against this individual should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir.2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Turning to the substantive allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into 6 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be

Case 3:17-cv-00092-DRH-RJD   Document 6   Filed 02/06/17   Page 12 of 29   Page ID #64


considered   dismissed   without   prejudice   as   inadequately   pled   under

the *Twombly* pleading standard.

> **Count 1 –** Defendants exhibited deliberate indifference to Plaintiff's serious medical
>> needs in violation of the Eighth Amendment when they confiscated his knee brace and refused to honor his knee brace and low bunk/low gallery permits during his stay in segregation.

> **Count 2 –** Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C.
>> §§ 12101 et seq., and/or Rehabilitation Act of 1973, § 504, 29 U.S.C. §§ 794-794e, by failing to accommodate Plaintiff's disability-related needs when they confiscated his knee brace and refused to honor his knee brace and low bunk/low gallery permits during his stay in segregation.

> **Count 3 –** After releasing Plaintiff from segregation in September 2015, Defendants
>> housed Plaintiff in a location that made it impossible for Plaintiff to access the showers.  This conduct violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., Rehabilitation Act of 1973, § 504, 29 U.S.C. §§ 794-794e, and/or Plaintiff's Eighth Amendment rights.

> **Count 4 –** Defendants retaliated against Plaintiff for filing grievances, in violation of the
>> First Amendment.

> **Count 5 –** Defendants ignored or mishandled Plaintiff's grievances, in violation of the
>> Plaintiff's constitutional rights.

> **Count 6 –** Defendant Meyer verbally harassed Plaintiff, in violation of the Plaintiff's
>> constitutional rights.

As discussed in more detail below, the Court finds as follows with respect to each Count:

Count 1 is subject to further review against **Doe 1, Doe 2, Pelker, Kirk, Watson, Hassameyer,** and **Butler**.  **Count 1** shall proceed against **Doe 1, Doe 2, Pelker, Kirk, Watson,** and **Hassameyer** in their **individual capacities only**. **Count 1** shall proceed against **Butler** in her **individual capacity** (to the extent that Plaintiff is seeking damages premised on Butler's personal involvement in the alleged constitutional violation) and **official capacity** (to the extent that Plaintiff is seeking injunctive relief).  **Count 1** shall be dismissed without prejudice as to **Mike, Meyer, Trost,** and **Wexford**.  **Count 1** shall be dismissed with prejudice as to **IDOC**.

Count 2 is subject to further review against **IDOC**.   **Count 2** shall be dismissed with prejudice as to all other Defendants.

Count 3 and **Count 4** shall be dismissed without prejudice as to all Defendants.

Count 5 shall be dismissed with prejudice as to all Defendants.

Count 6 shall be dismissed with prejudice as to **Meyer**, the only Defendant referenced with respect to this claim.

**Count 1**

Deliberate Indifference "to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' … proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical

need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The severe pain stemming from Plaintiff's knee injury, coupled with the fact that Plaintiff had been issued knee brace and low bunk/low gallery permits, satisfy the objective component of Count 1 for screening purposes.

To satisfy the subjective component, the Complaint must suggest that Defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being " 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' " and " 'draw[ing] the inference.' " *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104.

**Defendants Doe 1, Doe 2, Pelker, Kirk, Butler, Watson, and Hassameyer**

The subjective component is satisfied with respect to Count 1 as to Doe 1, Doe 2, Pelker, Kirk, Butler, Watson, and Hassameyer. According to the Complaint, Doe 1 disregarded both permits by confiscating Plaintiff's knee brace and housing Plaintiff in a location incompatible with Plaintiff's low gallery permit, thereby interfering with and/or delaying Plaintiff's prescribed course of treatment. This alleged constitutional violation continued for approximately 49 days, causing severe pain and exacerbating the Plaintiffs knee injury.  The Complaint further indicates that Doe 2, Pelker, Kirk, Butler, Watson, and Hassameyer were made aware of Plaintiff's need for his knee brace and placement in a lower gallery in detailed grievances, letters, and/or face-to-face conversations.[6]  Despite this knowledge, these Defendants ignored or failed to adequately address Plaintiff's needs.

Accordingly, these allegations support a claim of deliberate indifference under Count 1 against Doe 1, Doe 2, Pelker, Kirk, Butler, Watson, and Hassameyer.  Plaintiff's deliberate indifference claim will proceed against Doe 1, Doe 2, Pelker, Kirk, Watson, and Hassameyer in their individual capacities only. Plaintiff's deliberate indifference claim will proceed against Butler in her individual capacity (to the extent that Plaintiff is seeking damages premised on Butler's personal involvement in the alleged Constitutional violation) and official

---

[6] *See Perez v. Fenoglio,* 792 F.3d 768, 781-782 (7th Cir. 2015) ("[a]n inmate's correspondence to a prison administrator may ... establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of the constitutional deprivation.").

capacity (to the extent that Plaintiff is seeking injunctive relief in relation to this claim).

### Defendants Mike, Meyer, and Trost

The allegations in the Complaint fail to state a claim in Count 1 as to Mike, Meyer, and Trost.  According to the Complaint, Mike, Meyer, and Trost interacted with Plaintiff on August 17, 2015 – the day Plaintiff's knee brace was returned. There is no indication that these Defendants were involved with the alleged violation or had any knowledge of the alleged violation prior to August 17, 2015. Accordingly, the subjective component is not met with regard to these Defendants. As such, Count 1 shall be dismissed without prejudice as to Mike, Meyer, and Trost.

### Defendant IDOC

Count 1 shall be dismissed with prejudice against IDOC.  IDOC is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against the states in federal court for money damages).  Plaintiff cannot bring his claim for money damages against IDOC.  To the extent that Plaintiff is seeking injunctive relief, it can be carried out by Menard's warden, Defendant Butler, if it is ordered. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (when injunctive relief

is sought, it is generally appropriate to name the government official who is responsible for carrying out the requested relief, in his or her official capacity).

**Defendant Wexford**

Count 1 shall be dismissed without prejudice as to Wexford.   The Complaint alleges Wexford (a private corporation contracted to run the prison's healthcare unit) is liable because Kirk (a prison nurse) ignored Plaintiff's requests for help and failed to have his knee brace returned.   (Doc. 1, p. 14).   Thus, Plaintiff seeks to hold Wexford liable in its supervisory capacity over Kirk. *Respondeat superior* liability does not apply to private corporations under § 1983.   *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Accordingly, this allegation fails to state a claim as to Wexford.

Plaintiff also contends Wexford is liable "because it failed to train its employees adequately to provide medical care meeting the Eighth Amendment standard." (Doc. 1, p. 15).   Allegations of failure to train medical staff have been found to support a *Monell* claim.   *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927–28 (7th Cir. 2004).   However, in the instant case, Plaintiff's generic failure-to-train allegations are insufficient.   Plaintiff does not identify a specific policy, custom, or practice that is responsible for the alleged constitutional violation.   Rather, Plaintiff makes conclusory allegations about Wexford's failure to train its medical staff.   Such allegations do not sufficiently state a claim.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Court will dismiss Wexford without prejudice at this time.

**Count 2**

Count 2 is premised on the same allegations at issue in Count 1. The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Jaros*, 684 F.3d at 667. Thus, the two statutory schemes are applicable to this situation.

An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II. *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003). Additionally, an inmate may bring a private

cause of action for damages under Title II, *if* the state actor's conduct also violates the Eighth Amendment. *See U.S. v. Georgia*, 546 U.S. 151 (2006).

The allegations in the Complaint suggest that Plaintiff suffers from a disability as defined in the ADA and Rehabilitation Act. *See Jaros*, 684 F.3d at 672. Plaintiff has stated a claim for prospective injunctive relief under Title II of the ADA to the extent that Defendants are continuing to disregard his knee brace and low bunk/low gallery permits. Additionally, because the underlying claims may also state an Eighth Amendment deliberate indifference claim, Plaintiff may proceed on his claim for damages under the ADA.

Although Plaintiff has named a number of officials in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. See 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted).

Accordingly, Count 2 shall proceed against the Illinois Department of Corrections only. As to Count 2, all other Defendants are dismissed with prejudice.

**Count 3**

According to the Complaint, after releasing Plaintiff from segregation in September 2015, Plaintiff was housed in a location that made it impossible for Plaintiff to access the showers. (Doc. 1, p. 17). As a result, Plaintiff was unable to

"attend showers" for 390 days. *Id.*   The alleged conduct may constitute a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., Rehabilitation Act of 1973, § 504, 29 U.S.C. §§ 794-794e, and/or the Eighth Amendment.   However, the Complaint fails to associate this conduct with any particular defendant.   Absent this information, Plaintiff has failed to allege personal involvement as to any Defendant that is sufficient to state a claim.  *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation.").   Additionally, without identifying who is responsible for the alleged violation, the Complaint does not provide the type of notice contemplated under Rule 8.   *See Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (discussing fair notice).

As such, Count 3 is dismissed without prejudice.

**Count 4**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).   At the pleading stage a prisoner's retaliation claim is subject to a liberal notice pleading standard. See, e.g., *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (to state a claim for retaliation, a plaintiff must identify

the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put a defendant charged with unlawful retaliation on notice of the claim). The bare minimum a plaintiff must plead in a retaliation claim are the facts that would apprise the defendant of what the plaintiff did to provoke the alleged retaliation and what the defendant did in response. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Plaintiff contends Defendants retaliated against him for filing grievances and/or refusing to sign the new permit by transferring him to a more restrictive cell (the cell was "closed in with steel across the front that allows no air to come in the cell, no air coming out the vent"). (Doc. 1, p. 12). The only particular individuals identified in relation to this alleged retaliatory act are Officer Shemoney (not a defendant in the instant case) and Meyer. *Id.* According to the Complaint, Officer Shemoney is the prison official that transferred Plaintiff to the more restrictive cell. *Id.* When Plaintiff inquired about the reason behind the transfer, Officer Shemoney replied the decision "came from a higher authority." *Id.* As to Meyer, Plaintiff contends the retaliatory transfer was motivated in part, by Plaintiff's refusal to sign the new permit as requested by Meyer. *Id.* Plaintiff also raises allegations regarding cell "shake downs" conducted by unidentified prison officials. (Doc. 1, p. 18).

Even applying the liberal pleading standard discussed above, the Complaint fails to bring a viable First Amendment claim for retaliation.   While the complaint alleges the reason for retaliation (filing a grievance and refusing to sign the new permit) and the retaliatory action (transfer to a more restrictive cell and frequent cell "shake downs"), it fails to connect the retaliation with any particular defendant.  As to the cell transfer, Plaintiff merely alleges that it was motivated in part by his refusal to sign a new permit as requested by Meyer.  However, there is no allegation that Meyer is the defendant associated with the retaliatory act. Plaintiff merely alleges that the decision came from a "higher power."  Further, no particular defendant is identified in relation to the alleged "shake downs."

Absent this information, Plaintiff has failed to allege personal involvement as to any Defendant that is sufficient to state a claim for retaliation.  *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).   Further, without identifying who is responsible for the alleged retaliation, the Complaint does not provide the type of notice contemplated under Rule 8.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Accordingly, Count 3 is dismissed without prejudice.

**Count 5**

To the extent that Plaintiff is attempting to allege a constitutional violation in relation to access to the grievance process and/or mishandling of grievances, the claim is subject to dismissal.   The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures

does not, by itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir.1982).  Even assuming Plaintiff's grievances were ignored and/or mishandled, this conduct, standing alone, does not establish a constitutional violation.

Accordingly, Count 5 is dismissed with prejudice.

**Count 6**

The Complaint discusses an encounter between Plaintiff and Meyer occurring on August 17, 2015.  (Doc. 1, p. 7).  According to Plaintiff, Meyer directed Plaintiff to sign a new permit that did not include a low gallery authorization.  *Id.*  Plaintiff refused to sign the permit and questioned Meyer's motivation.  *Id.*  This angered Meyer.  *Id.*  Meyer began pacing and said "if you do not sign that permit you will have problems back here!"  *Id.*  Then Meyer walked off.  *Id.*

These allegations describe verbal harassment.   Simple, run-of-the-mill verbal harassment does not state a constitutional claim—it does not "constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000).  That said, more extreme instances of verbal harassment, especially verbal harassment that constitutes a grave threat to a prisoner's life or that could subject a prisoner to serious harm by other inmates, could violate the Eighth Amendment. *E.g., Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015); *Dobbey v. Illinois Dep't of*

*Corrections*, 574 F.3d 443, 445 (7th Cir. 2009).  Here, although Meyer's conduct may constitute verbal harassment, it does not come close to the type of serious harassment that is actionable in a § 1983 claim.

Accordingly, Count 6 is dismissed with prejudice.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against John Doe 1 (unidentified cell house gallery officer) and John Doe 2 (unidentified cell house gallery officer).  However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Count 1 is proceeding against the Warden of Menard, Butler, in her individual capacity (to the extent that Plaintiff is seeking damages premised on Butler's personal involvement in the alleged Constitutional violation) and official capacity (to the extent that Plaintiff is seeking injunctive relief).  Butler shall also be responsible for responding to discovery, informal or formal, aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge.  Once the names of these defendants are discovered,

Plaintiff shall file a Motion to Substitute the newly identified defendant in place of the general designation in the case caption and Complaint.

## Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) shall be addressed in a separate Order of this Court. However, for purposes of determining how service of process shall proceed, the Court observes that Plaintiff appears to qualify for pauper status, so service of summons and the Complaint will be effected at government expense. *See* 28 U.S.C. § 1915(d).

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to a United States Magistrate Judge for a decision.

## Disposition

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction as a separate docket entry in CM/ECF. This motion is hereby **REFERRED** to a United States Magistrate Judge for prompt disposition.

The Clerk is directed to **TERMINATE** the following defendants as parties in CM/ECF, based on Plaintiff's failure to sufficiently plead claims against them: **LIEUTENANT MEYER, JOHN TROST, MIKE,** and **WEXFORD HEALTH SOURCES**.

**IT IS HEREBY ORDERED** that **COUNTS 3** and **4** are **DISMISSED** without prejudice as to all Defendants, **COUNT 5** is **DISMISSED** with prejudice as to all Defendants, and **COUNT 6** is **DISMISSED** with prejudice as to **MEYER**, the only Defendant referenced in connection with **COUNT 6.**

**IT IS FURTHER ORDERED** that **COUNT 1** is subject to further review against **DOE 1, DOE 2, PELKER, KIRK, WATSON,** and **HASSAMEYER** in their individual capacities only. **COUNT 1** is subject to further review against **BUTLER** in her individual and official capacities. **COUNT 1** is **DISMISSED** without prejudice as to **MIKE, MEYER, TROST,** and **WEXFORD**. **COUNT 1** is **DISMISSED** with prejudice as to **IDOC.**

**IT IS FURTHER ORDERED** that **COUNT 2** is subject to further review against **IDOC**. **Count 2** is **DISMISSED** with prejudice as to all other **DEFENDANTS**.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2** the Clerk of the Court shall prepare for Defendants **DOE 1** (once identified)**, DOE 2** (once identified)**, PELKER, KIRK, WATSON, HASSAMEYER, BUTLER,** and **IDOC** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

No service shall be made on the unknown defendants (Doe 1 and Doe 2) until such time as Plaintiff has properly identified them in a Motion for Substitution of Parties.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) and Motion for Preliminary Injunction and a plan for discovery aimed at identifying the unknown defendants (Doe 1 and Doe 2) with particularity.   Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.   Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.   Failure to comply with this order will cause a delay in the

transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Signed February 3rd, 2017.

Digitally signed by
Judge David R.
Herndon
Date: 2017.02.03
16:54:32 -06'00'

**UNITED STATES DISTRICT JUDGE**