IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VANDAIRE KNOX, | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:17-cv-00092-SMY |
| | ) |
| KIMBERLY BUTLER, CAMERON WATSON, CHAD HASSAMEYER, ROGER PELKER, ILLINOIS DEPARTMENT OF CORRECTIONS, JASON B. MIGNERON, RON STELL, JACOB BOHNERT,[1] | ) ) ) ) ) ) |
| | ) |
|        **Defendants.** | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff VanDaire Knox, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center. This matter is now before the Court on the parties cross-motions for summary judgment[2] (Docs. 131[3] and 138). For the following reasons, Defendants' Motion is **GRANTED in part** and **DENIED in part** and Plaintiff's Motion is **DENIED**.

## Procedural And Factual Background

In the Complaint (Doc. 1), Plaintiff alleges he suffers from persistent swelling and severe pain in his left knee, and that in June, July, and August 2015, his knee brace was confiscated for

---

[1] The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect the complete and correct spellings of Defendants' names.

[2] Defendant Jacob Bohnert remains unserved and has not moved for summary judgment.

[3] Defendants' motion is captioned as a "partial" motion for summary judgment. It is unclear which claims are not included in Defendants' motion as it identifies all IDOC parties currently represented and addresses all pending claims.

approximately 49 days. He also alleges that his low bunk/low gallery permits were not honored and as a result, he experienced severe pain in his knee and he was unable to shower. Following preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff has proceeded on the following claims (Doc. 6):

> Count 1: Defendants Migneron, Stell, Pelker, Watson, Bohnert, Hassameyer, and Butler exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they confiscated his knee brace and refused to honor his knee brace and low bunk/low gallery permits during his stay in segregation.[4]
>
> Count 2: IDOC violated the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act by failing to accommodate Plaintiff's disability-related needs when they confiscated his knee brace and refused to honor his knee brace and low bunk/low gallery permits during his stay in segregation.

Defendant Butler is also named in her official capacity for purposes of injunctive relief.

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Plaintiff injured his knee in 2006 and has had a knee brace for stabilization since that time. (Deposition of VanDaire Knox, Doc. 132-1, p. 8; Doc. 1, p. 4). Upon his arrival at Menard, Plaintiff was in possession of a low bunk permit, low gallery permit, and permit for his knee brace. (Doc. 132-1, p. 8).

While placing Plaintiff in a segregation cell on June 30, 2015, Officer Jason Migneron conducted a strip search of Plaintiff and confiscated his knee brace. (*Id.*, p. 3). Plaintiff showed his medical permits to Migneron who indicated he would need to talk to the sergeant. (*Id.*). Migneron left for a period of time, but Plaintiff is unsure whether Migernon spoke to the sergeant. (*Id.*, p. 10). Migneron subsequently escorted Plaintiff to a cell in Gallery 4 – a higher gallery, in a low bunk. (*Id.*).

---

[4] Defendant Susan Kirk was dismissed from this claim on September 30, 2019. (Doc. 144).

Plaintiff was informed by Officer Stell on July 2, 2015 that he was being moved from Gallery 4 to Gallery 8. (Doc. 132-1, p. 10; Docs. 1, 81). Plaintiff showed Stell his medical permits. (*Id.*). Stell told Plaintiff he had to talk to the sergeant and later advised Plaintiff the sergeant indicated the permits did not matter and Plaintiff still had to be moved. (*Id.*). Plaintiff was moved to Gallery 8 and was assigned to an upper bunk. (*Id.*, pp. 11, 13). This move caused Plaintiff to climb an additional two flights of stairs and exacerbated his knee pain. (*Id.*, p. 10; Doc. 1, p. 5). Plaintiff asked the gallery officer, Defendant Officer Bohnert, to see "medical," but his request was denied. (Doc. 132-1, p. 11; Docs. 1, 81).

Following his placement in Gallery 8, Plaintiff wrote numerous letters to Defendants complaining that his knee brace had been confiscated and medical permits were being ignored. (*see* Doc. 1-1, pp. 1-7). Plaintiff first wrote Warden Butler on July 15, 2015. (Doc. 132-1, p. 13; Doc. 1-1, p. 1). This letter was placed in Plaintiff's cell bars and was picked up by an officer, but Plaintiff never received a response. (Doc. 132-1, p. 13). Plaintiff then wrote Assistant Warden Watson on July 18, 2015. (*Id.*, p. 15; Doc. 1-1, p. 2). Again, Plaintiff did not receive a response. (Doc. 132-1 p. 15). Plaintiff wrote to Sgt. Pelker on July 20, 2015, again placing the letter in the bars of his cell. (*Id.*, p. 12; Doc. 1-1, p. 3). Although this letter was picked up by a gallery officer, Plaintiff never received a response. (Doc. 132-1, p. 12). The following day, Plaintiff sent another letter to Assistant Warden Watson that went unanswered. (*Id.*, p. 15; Doc. 1-1, p. 5). Sometime before August 10, 2015, Plaintiff sent a second letter to Warden Butler that went unanswered. (Doc. 132-1, p. 14; Doc. 1-1, p. 4). Plaintiff had also spoken to Warden Butler on the gallery before sending her the second letter, but his issues were not addressed. (Doc. 132-1, p. 14).

Plaintiff submitted an emergency grievance on August 10, 2015 complaining about the confiscation of his knee brace and housing in contravention of his medical permits. (*Id.*; Doc. 132-4, pp. 3-5). Warden Butler expedited the grievance as an emergency on August 14, 2015. (Doc.

132-4, p. 3). That same day, the Grievance Officer recommended that it be affirmed. (*Id.*, p. 2).

Also on August 14, 2015, Plaintiff sent a letter to Major Hassameyer as a follow-up to an in-person discussion that had occurred. (Doc. 132-1, p. 15; Doc. 1-1, p. 7). Plaintiff questioned why Hassameyer had not followed-up after Plaintiff explained his permit issues. (*Id.*). Soon thereafter, on August 17, 2015, Plaintiff's knee brace was returned. Plaintiff was moved to a low gallery (2 Gallery) and was placed in a lower bunk on August 19, 2015. (Doc. 132-1, pp. 4, 12).

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do." *Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 682 (7th Cir. 2014). In deciding a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012).

**Count 1 – Eighth Amendment Deliberate Indifference claim
against Defendants Migneron, Stell, Pelker, Watson, Bohnert, Hassameyer, and Butler**

Plaintiff claims Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment when they confiscated his knee brace and refused to honor his knee brace, low bunk, and low gallery permits for approximately 49 days. Deliberate

indifference to serious medical needs of inmates may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must prove that his condition was "objectively, sufficiently serious" and that "prison officials acted with a sufficiently culpable state of mind," namely, deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). "Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted). Here, it is undisputed that Plaintiff's medical condition presented a serious medical need.

Defendants Migernon and Stell argue they were not deliberately indifferent to Plaintiff's medical needs because they were not responsible for his cell placement and do not dictate what property inmates are allowed to have in segregation. They also maintain they attempted to take corrective action by speaking with a supervisor, but did not have the final decision in the matter.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). If nonmedical personnel consciously choose to disregard a nurse or doctor's directions in the face of medical risks, they may well exhibit deliberate indifference. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 812 (7th Cir. 2000).

Migneron and Stell clearly participated in or continued the confiscation of Plaintiff's knee brace, and there is evidence they were aware of Plaintiff's medical permits, but disregarded them. They have produced no evidence they were following the orders of their superiors in disregarding the medical permits. Thus, viewing the evidence in Plaintiff's favor, a reasonable jury could find they were personally involved and acted with deliberate indifference to Plaintiff's serious medical needs.

Defendants Watson, Hassameyer, and Butler contend they are entitled to summary judgment because they were not personally involved in Plaintiff's medical care.[5] They argue there is no evidence they received the letters Plaintiff allegedly sent complaining about the failure to observe his medical permits. Defendant Butler also argues that the evidence shows she quickly responded after she reviewed Plaintiff's August 10, 2015 grievance – Plaintiff received his knee brace within a week and was moved to an appropriate cell soon thereafter. Defendant Hassameyer makes the same argument and asserts that Plaintiff's concerns were addressed and his permits were observed after Plaintiff purportedly spoke with him on August 11, 2015.

Plaintiff presents evidence that he began writing letters to these defendants on July 15, 2015 and continued to do so until August 14, 2015. Defendants assert there is no evidence that they actually received these letters, but Plaintiff testified he placed them in the bars of his cell and they were picked up by a gallery officer. This creates a material issue of fact for the jury's determination. If the jury concludes that Defendants received the letters, the letters were sufficient in their content and manner of transmission to alert them that Plaintiff's medical permits were not being observed. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). The evidence, when viewed in Plaintiff's favor, is sufficient to support a reasonable conclusion that Defendants' inaction

---

[5] Defendants' motion does not raise a particularized argument as to Defendant Pelker. However, the arguments made with respect to Defendants Watson, Hassameyer, and Butler also apply to Pelker.

amounted to deliberate indifference.

Defendants also argue they are entitled to qualified immunity.[6] Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.*

By June 2015, it was clearly established and apparent from pre-existing law that ignoring the directives of medical professionals may violate an inmate's constitutional rights. *See Zentmyer*, 220 F.3d at 812. Accordingly, Defendants are not entitled to qualified immunity or summary judgment on the claim in Count 1.

**Count 2 - ADA and RA claim against Defendant IDOC**

In Count 2, Plaintiff alleges IDOC violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to accommodate his disability-related needs when officials confiscated his knee brace and refused to honor his other medical permits while he was in segregation. In the prison context, a plaintiff can make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act by establishing: "(1) he is a qualified person; (2) with a disability; and (3) the Department of Corrections denied him access to a program or activity

---

[6] Defendant Pelker was again not mentioned in Defendants' argument. However, the discussion on qualified immunity is applicable to him as well.

because of his disability." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (citations omitted). "Refusing to make reasonable accommodations is tantamount to denying access…" *Id*. Accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility. *Love v. Westville Correctional Center,* 103 F.3d 558, 561 (7th Cir. 1996).

IDOC asserts there is no evidence Plaintiff was denied any service, program, or activity due to an alleged failure to accommodate his disability. But consistent with the allegations in his verified Complaint, Plaintiff argues he was unable to attend yard as a result of Defendants' actions in confiscating his knee brace. Thus, Count 2 survives summary judgment as well.[7]

### Plaintiff's Motion for Summary Judgment

Plaintiff claims Defendant Butler misrepresented the dates during which she was Menard's Warden in her interrogatory responses, and requests that judgment be entered against her for $10,000. In her interrogatory responses, Butler indicated she was the warden from April 16, 2016 to September 30, 2016. In response to Plaintiff's motion, she clarifies that she was the warden from April 16, 2014 through September 30, 2016 and explains that her interrogatory response was incorrect due to a typographical error. Butler's incorrect interrogatory response does not warrant the entry of judgment in Plaintiff's favor or any other sanction. There is no indication the error was made in bad faith or with the purpose of misleading Plaintiff or the Court. Moreover, the information in question is not material to Plaintiff's claims or Butler's defense. Accordingly, Plaintiff's motion is denied.

---

[7] Defendant Butler seeks summary judgment on Plaintiff's claim for injunctive relief, citing Plaintiff's transfer from Menard to Lawrence Correctional Center. When a prisoner is transferred or released from IDOC custody, his claims for injunctive relief are moot unless he can demonstrate that he is likely to be retransferred. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). As there is no evidence that Plaintiff is likely to be transferred back to Menard, his request for injunctive relief is moot and Defendant Butler is entitled to summary judgment in her official capacity only.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 131) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to the claims in Counts 1 and 2 against Defendants Migneron, Stell, Pelker, Watson, Hassameyer, Butler (individual capacity only), and the Illinois Department of Corrections and is **GRANTED** on Plaintiff's claim for injunctive relief.  Accordingly, Defendant Kimberly Butler is **DISMISSED** in her official capacity.  Plaintiff's Motion for Summary Judgment (Doc. 138) is **DENIED**.

Finally, the Clerk of Court is **DIRECTED** to correct Defendants' names in accordance with footnote 1 and the case caption.

**IT IS SO ORDERED.**

**DATED:  August 24, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**